United States District Court
Southern District of Texas
**ENTERED**
August 15, 2016
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| HCC INSURANCE HOLDINGS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-15-2564 |
| | § | |
| MICHAEL REMEIKA, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

## I.     Background

On September 4, 2015, the plaintiff, HCC Insurance Holdings, Inc., sued its former senior vice-president, Michael Remeika, for breach of contract and breach of fiduciary duty. (Docket Entry No. 1). During the 19 years he worked at HCC, Remeika entered into several stock-option contracts. The contracts at issue are the "2004 Flexible Incentive Plans" and the "2008 Flexible Incentive Plan." (Docket Entry No. 30, Exs. B–D).

The contracts state that Texas law governs and that any disputes arising from the contracts will be resolved "in the state and/or federal courts of Harris County, Texas and the Southern District of Texas, Houston Division, respectively." (Docket Entry No. 30, Ex. B at ¶ 22; Docket Entry No. 30, Ex. C at ¶ 22; Docket Entry No. 30, Ex. D at ¶ 18). Each contract also has a "Forfeiture of Option Gain" provision. (Docket Entry No. 30, Ex. B at ¶ 13; Docket Entry No. 30, Ex. C at ¶ 13; Docket Entry No. 30, Ex. D at ¶ 11). The provision states that if Remeika

> engages in any activity in competition with any activity of the Company [HCC] . . . . or inimical, contrary, or harmful to the interests of the Company . . . including, without limitation:

1

     (i)       conduct related to the Employee's employment for which either criminal or civil penalties may be sought against the Employee;

     (ii)      violation of the policies of the Company, including, without limitation, the Company's insider trading policy;

     (iii)     disclosing or misusing any confidential information or material concerning the Company;

     (iv)     participating in a hostile takeover attempt;

     (v)       directly or indirectly owning, managing, operating, controlling, investing, or acquiring an interest in . . . any Competitive Business . . . operating in, or soliciting business from, the Company's Market . . .; or

     (vi)     making any statement (orally or in writing) about the Company . . . or any service or product of the Company . . . which is false and may reasonably be expected to be detrimental to the Company . . . .,

then:

     (xx) this option shall terminate effective as of the date on which the Employee [Remeika] engages in such activity, unless terminated sooner by operation of another term or condition of his Agreement or the Plan, (yy) any option gain realized by the Employee from exercising all or a portion of the option, or such lesser amount as shall be determined to be the maximum reasonable and enforceable amount by a court or arbitrator, shall be paid by the Employee to the Company, and (zz) the Company shall be entitled to receive from Employee all Common Stock held by Employee that was acquired under this Agreement or the Plan.

(Docket Entry No. 30, Ex. B at ¶ 13(a); Docket Entry No. 30, Ex. C at ¶ 13(a); Docket Entry No. 30, Ex. D at ¶ 11(a)).

HCC alleged that Remeika breached subsection (v), the noncompete clause, when, after his August 2015 resignation, he and HCC's former vice-president of marketing, Valda Flowers, started a new company, Creative Risk Underwriters, to compete with HCC. HCC sought to recover the value of Remeika's stock-option gains and attorney's fees.

2

Twelve days after filing this action, HCC sued Flowers and Creative Risk in the United States District Court for the Northern District of Georgia.  HCC alleged that Remeika and Flowers misappropriated its confidential information and that Creative Risk, acting through Remeika, tortiously interfered with Flowers's HCC employment contract.  (Docket Entry No. 6, Ex. 1).

In the Houston case, Remeika moved to dismiss or to transfer the claim for breach of fiduciary duty.  At the November 2015 initial conference, the parties agreed to sever that claim and transfer it to the Northern District of Georgia as a new action.  (Docket Entry No. 11).[1]  The court entered an order of severance and transfer.  (Docket Entry No. 12).  HCC's contract-breach claim remained in this court.[2]

On February 12, 2016, Remeika counterclaimed, seeking a declaratory judgment under the Texas Declaratory Judgment Act, TEX. CIV. PRAC. & REM. CODE § 37.001 *et seq.*, that HCC's only remedy for breach of the "Forfeiture of Gains" provision was to recover Remeika's stock-option gains.  Remeika also sought attorney's fees.  (Docket Entry No. 17).

The parties cross-moved for summary judgment.  (Docket Entry Nos. 30, 31).  After the summary judgment briefing concluded, Remeika sought leave to file an amended counterclaim for a declaratory judgment under the federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), and for

---

[1]  The Georgia federal court consolidated the transferred case with HCC's pending lawsuit against Flowers and Creative Risk.  *See HCC Ins. Holdings, Inc. v. Flowers*, No. 15-cv-3262 (N.D. Ga.) (Docket Entry No. 66).  HCC filed a second amended complaint incorporating the breach-of-fiduciary-duty claim against Remeika, (Docket Entry No. 69), and the defendants filed a motion for summary judgment on July 29, 2016, (Docket Entry No. 87).

[2]  At the initial conference, the parties refused to consent to transferring the entire case, citing the stock-option contract's forum-selection clause.  (Docket Entry No. 20).

the court to consider the motion on an expedited basis.  (Docket Entry Nos. 41, 42).  HCC opposed the motions.  (Docket Entry Nos. 46, 47).

Remeika concedes that he breached the noncompete clause of the stock-option contracts, and he has agreed to repay HCC $213,112.54 in stock-option gains.  (Docket Entry No. 31 at p. 6). Remeika further concedes that HCC can recover its attorney's fees under TEX. CIV. PRAC. & REM. CODE § 38.001(8), and he has agreed to pay HCC $15,878.50 for work its attorneys performed enforcing the parties' contracts through December 2015.  (Docket Entry No. 38 at p. 10).

Two narrow issues of disagreement persist.  The parties dispute whether summary judgment should be granted on Remeika's counterclaim for a declaratory judgment.  The parties also dispute whether HCC is entitled to an additional $15,466.50 in attorney's fees for work its attorneys performed from December 2015 to July 2016, for a total fee award of $31,345.  (Docket Entry No. 40 at p. 6).

Based on the record, the parties' briefs and arguments, and the applicable law, the court grants HCC's motion for summary judgment, (Docket Entry No. 30), and denies Remeika's cross-motion, (Docket Entry No. 31).  The court also denies Remeika's motion for leave to amend. (Docket Entry No. 41).  The motion to consider that request on an expedited basis is dismissed as moot.  (Docket Entry No. 42).  No later than **August 22, 2016**, the parties must confer and submit a proposed final judgment consistent with this Memorandum and Opinion.

The reasons for these rulings are explained below.

## II.    The Declaratory-Judgment Counterclaim

Remeika counterclaimed under the Texas Declaratory Judgment Act, seeking a declaratory

4

judgment that the value of his stock-option gains is HCC's only remedy for his breach of the stock-option contracts.  (Docket Entry No. 17).  Although Remeika concedes that he breached subsection (v) of the "Forfeiture of Gains" provision (the noncompete clause), he argues that if he breached any other subsections—including subsection (iii), the nondisclosure clause—HCC's damages are limited to his stock-option gains.  Remeika argues that HCC "is free to assert other statutory or common law claims against Remeika, as it has done in the Georgia lawsuit," for damages based on the alleged misappropriation of HCC's confidential information.  (Docket Entry No. 38 at p. 5).  Remeika seeks the declaratory judgment to ensure that HCC "is not free to repeatedly bring claims for breach of contract."  (*Id.*).  The parties dispute whether the contracts show a clear intent to limit HCC's remedy for a contract breach to recovering the stock-option gains.  (Docket Entry Nos. 30, 31).

Remeika's counterclaim fails for three reasons.  First, the Texas Declaratory Judgment Act does not apply in federal court.  Second, Remeika has not shown good cause to amend under Federal Rule of Civil Procedure 16(b)(4).  Third, even if Remeika had shown good cause, amendment would be futile.

Each is explained below.

## A.    The Texas Declaratory Judgment Act Does not Apply in Federal Court

The case law is clear that, as HCC argues, summary judgment dismissing the counterclaim is appropriate because the Texas Declaratory Judgment Act does not apply in federal court.  *See Vera v. Bank of Am., N.A.*, 569 F. App'x 349, 352 (5th Cir. 2014) (per curiam) ("The [Texas Declaratory Judgment Act] is a procedural, and not a substantive, provision and therefore does not apply to actions in federal court.  As a result, Plaintiffs cannot maintain their declaratory judgment

action against Defendants." (citing *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998)).  HCC's motion for summary judgment on Remeika's counterclaim is granted.

### B.    Remeika Has not Shown Good Cause for Leave to Amend

On July 22, 2016, about six weeks after HCC first moved for summary judgment on this ground, and five months after he filed the counterclaim, Remeika moved to amend, asserting the federal Declaratory Judgment Act as the basis for his counterclaim.  (Docket Entry No. 41).  HCC opposed the motion because Remeika filed it long after the court's February 29, 2016 deadline for motions for leave to amend the pleadings and after the summary judgment briefing concluded. (Docket Entry Nos. 23, 46, 47).  Each of HCC's summary judgment briefs pointed to Remeika's reliance on the Texas Declaratory Judgment Act as a basis for granting HCC summary judgment, including its June 6, 2016 cross-motion for summary judgment,  (Docket Entry No. 30 at p. 13–14), its July 11, 2016 response to Remeika's cross-motion for summary judgment, (Docket Entry No. 39 at p. 14), and its July 21, 2016 reply in support of its cross-motion, (Docket Entry No. 40 at p. 2).

"Although[] Rule 15(a) of the Federal Rules of Civil Procedure ordinarily governs the amendment of pleadings, Rule 16(b) governs the amendment of pleadings after a scheduling order's deadline to amend has expired."  *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 237 (5th Cir. 2015) (quotation marks omitted).  A scheduling order "may be modified only for good cause and with the judge's consent."  FED. R. CIV. P. 16(b)(4).  "There are four relevant factors to consider when determining whether there is good cause under Rule 16(b)(4): (1) the explanation for the failure to timely [comply with the scheduling order]; (2) the importance of the [modification]; (3) potential prejudice in allowing the [modification]; and (4) the availability of a continuance to cure such

6

prejudice." *Squyres*, 782 F.3d at 237 (alterations in original) (quotation marks omitted).  As the party seeking to modify the scheduling order, Remeika has the burden to show good cause.  *Id.*  If Remeika shows good cause, "then the more liberal standard of Rule 15(a) will apply."  *Id.* (quotation marks omitted).  In deciding whether to grant leave to file an amended pleading, a district court may consider factors such as undue delay, undue prejudice to the opposing party, and futility of amendment.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).

Remeika argues that leave to amend should be granted because counsel's "intent at all times was to assert a request for declaratory relief pursuant to the federal Declaratory Judgment Act," and because counsel did not realize the "drafting mistake" due to an "oversight."  (Docket Entry No. 41 at p. 1).   Remeika's explanation for its five-month delay in moving to amend the pleadings—"inadvertence—is tantamount to no explanation at all."  *See S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003) (district court did not abuse its discretion in denying leave to amend under Rule 16(b)(4) based on counsel's inadvertence).  The fact that Remeika moved for leave to amend after the summary judgment briefing ended also weighs against granting leave.  Although a pending summary judgment motion does not automatically bar amendments, it is "significant in the determination whether a plaintiff's subsequent motion to amend is timely."  *Little v. Liquid Air Corp.*, 952 F.2d 841, 846 n.2 (5th Cir. 1992); *see also Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999) (courts must "more carefully scrutinize a party's attempt to raise new theories of recovery by amendment when the opposing party has filed a motion for summary judgment.").  Remeika has not alleged newly discovered facts to explain the untimely

amendment; instead, the proposed amendment asserts a new claim based on the same facts he alleged in his earlier pleadings.  A court may deny a motion for leave to amend if the movant "knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint." *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340–41 (2d Cir. 2000) (Sotomayor, J.) (denying leave to amend under Rule 16(b) when the facts were known to plaintiff at the time of the first complaint); *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (per curiam) (same); *Pope v. MCI Telecomms., Inc.*, 937 F.2d 258, 263 (5th Cir. 1991) (denying, under Rule 15(a)'s more lenient standard, a late-filed motion to amend a complaint to include claims based on same facts).

Remeika's motion for leave to amend is denied.  (Docket Entry No. 41).  His motion to expedite consideration of the motion for leave to amend is dismissed as moot.  (Docket Entry No. 42).

### C.    Leave to Amend Would Be Futile

Remeika's proposed amendment is also futile.  "In the event of a breach[,] a party to a contract can pursue any remedy which the law affords in addition to the remedy provided in the contract, unless the contract declares the remedy to be exclusive." *Tabor v. Ragle*, 526 S.W.2d 670, 676 (Tex. App.—Fort Worth 1975, writ ref'd n.r.e.).  "Remedies provided in a contract may be permissive or exclusive, and the mere fact that the contract provides a party with a particular remedy does not necessarily mean that such a remedy is exclusive." *Pelto Oil Corp. v. CSX Oil & Gas Corp.*, 804 S.W.2d 583, 586 (Tex. App.—Houston [1st Dist] 1991, writ denied).  "A construction

which renders the specified remedy exclusive should not be made unless the intent of the parties that it be exclusive is clearly indicated or declared." *Vandergriff Chevrolet Co., Inc. v. Forum Bank*, 613 S.W.2d 68, 70 (Tex. App.—Fort Worth 1981, no writ). "In determining the intent of the parties to an unambiguous written instrument the general rule is that every clause must be given effect with a view toward what is objectively stated rather than what is subjectively meant by the parties." *Id.*

Remeika asserts that "[b]y its express terms, HCC's remedy under the [stock-option contracts] is limited to recoupment of the stock-option gains realized by Remeika." (Docket Entry No. 31 at p. 10). The contractual language undermines this argument. The contracts give HCC at least three potential remedies for breach: the right to terminate the contract; the right to recover any stock-option gains; and the right to recover the common stock provided under the contract. "[E]xamination of the contract reveals no other language relating to the specified remedies or any language indicating that the parties intended those remedies to be exclusive." *See Allen v. King*, No. 03-cv-140, 2004 WL 252097, at *3 (Tex. App.—Tyler 2004, reh'g overruled); *see also Myriad Dev., Inc. v. Alltech, Inc.*, 817 F. Supp. 2d 946, 966 (W.D. Tex. 2011) ("[L]anguage such as 'exclusive' or 'sole' remedy are an indication of an exclusive remedy." (quotation marks omitted)). The contract language does not "clearly indicate" that the parties intended to make recovery of the stock-option gains the exclusive remedy for breaching the agreements.

Remeika argues that "[n]owhere in the option agreements does it provide that HCC will be entitled to recover unlimited damages resulting from Remeika's competition or use of confidential information." (Docket Entry No. 38 at p. 5). Remeika fears that HCC will "repeatedly bring claims for breach of contract," reasserting the same claims asserted against him in the Northern District of

Georgia for misappropriating HCC's confidential information. (*Id.*).

This opinion holds that the stock-option contracts do not make any gains in the stock value the exclusive remedy for breach. The opinion does not hold that if HCC sued Remeika in the future, it could, or could not, recover damages for breach of the stock-option contracts "in addition to the remedy provided in the contract[s]"; what those damages might be; or how they would be quantified. *See Tabor*, 526 S.W.2d at 676. Nor does this opinion state whether the judgment entered here has a preclusive effect in the Georgia litigation or in any future action HCC might bring relating to Remeika's use of confidential information or alleged contract breach. *See, e.g.*, *Medellin v. Texas*, 552 U.S. 491, 513 n.9 (2008) ("The first court does not get to dictate to other courts the preclusion consequences of its own judgment." (quotation marks omitted)). The only question addressed in this opinion is whether, under Texas law, the stock-option contracts provide an exclusive remedy. The holding is that the language fails to show the "clear" expression of the parties' intent to limit remedies that the case law requires.

The futility of Remeika's proposed amendment provides an independent ground supporting the dismissal of his counterclaim.

## III.    Attorney's Fees for the Contract-Breach Claim

State law governs attorney's fee awards in a diversity case. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). "Texas follows the American Rule, which provides that there can be no recovery of attorney's fees unless authorized by contract or statute." *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 172 (Tex. 2013). "Despite that general rule, Texas law specifically provides for the recovery of attorney's fees in breach of contract cases." *Structural Metals, Inc. v.*

*S&C Elec. Co.*, 590 F. App'x 298, 304 (5th Cir. 2014) (per curiam) (citing Tᴇx. Cɪᴠ. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ § 38.001(8)).

HCC has prevailed on its contract-breach claim and is entitled to the reasonable attorney's fees incurred in litigating that claim. The claim was not decided until summary judgment. Summary judgment briefing concluded in July 2016. HCC is entitled to its reasonable attorney's fees through July 2016, when it filed its briefs. The issue is whether the fees incurred after December 2015 are reasonable.

Remeika argues that HCC's attorney's fees for work after December 2015 are unreasonable because most of the case had been resolved at that point. Remeika had conceded that he breached the stock-option contracts and the amount of stock-option gains he owed. Remeika argues that the case proceeded to summary judgment only because HCC refused to release him from other contract-breach claims based on the stock-option contracts. (Docket Entry No. 38 at p. 8–9). Remeika argues that this was the only reason the case did not settle by the end of 2015.

 Remeika does not argue that the fees are unreasonable because HCC failed to present them or account for them properly. Nor does Remeika argue that the hours spent or the hourly rates billed are unreasonable. The only argument is that HCC failed to release Remeika from future contract-breach claims. Remeika has not cited, and the court has not found, Texas case law holding that the details of failed settlement efforts are a relevant factor to consider in determining a reasonable fee award. The record does not show that HCC "engaged in a frivolous pursuit of [its] claims so as to increase attorney's fees, or that the attorneys engaged in behavior [that was] otherwise objectionable." *See Pineda v. JTCH Apartments, LLC*, 126 F. Supp. 3d 797, 805 (N.D. Tex. 2015),

*appeal filed*, No. 15-10932 (5th Cir. Sept. 28, 2015).  HCC's rejection of Remeika's settlement offer

was based on HCC's objectively reasonable belief that Remeika sought "an overbroad release" of

the claims it might seek to assert against him.  (Docket Entry No. 47 at p. 7).  The record does not

show that this decision was unreasonable or an improper effort to "drive up attorney's fees without

a legitimate reason."  *See id.* at 803; *see also, e.g.*, *Carroll v. Sanderson Farms, Inc.*, No. 10-cv-

3108, 2014 WL 549380, at *15 n.10 (S.D. Tex. Feb. 11, 2014) (the parties "had the right to refuse

to settle," and the court found "no authority . . . that considers a refusal to settle to be a factor for

consideration in determining an award of attorney's fees to a prevailing plaintiff.); *cf. Alfonso R. v.

El Paso Indep. Sch. Dist.*, No. 04-cv-433, 2006 WL 1280936, at *5 (W.D. Tex. May 1, 2006)

(plaintiff did not "unreasonably protract[]" litigation under the Individuals with Disabilities

Education Act, 20 U.S.C. § 1400 *et seq.*, "by refusing to settle for less than that to which he was

entitled.").[3]

The court awards HCC the attorney's fees it seeks, $31,345, for litigating its contract-breach

claim through summary judgment.

**IV.   Conclusion**

The court grants HCC's motion for summary judgment, (Docket Entry No. 30), and denies

Remeika's cross-motion, (Docket Entry No. 31).  The court also denies Remeika's leave to amend.

(Docket Entry No. 41).  The motion to consider that request on an expedited basis is dismissed as

moot.  (Docket Entry No. 42).

---

[3] The record does not show that HCC made an offer of judgment under Federal Rule of Civil Procedure 68.

No later than **August 22, 2016**, the parties must confer and submit a proposed final judgment consistent with this Memorandum and Opinion.

SIGNED on August 15, 2016, at Houston, Texas.

Lee H. Rosenthal
United States District Judge